IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN PEACOCK,<br><br>  Plaintiff,<br>v.<br><br>FRANK WILLIS, RUTH WILLIS, and<br>W.W. BOER GOATS, INC.<br><br>  Defendants. | CV F 06-432 AWI LJO<br><br>ORDER ON DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE (Rule 12(b)(3)), OR TRANSFER FOR IMPROPER VENUE (28 U.S.C. § 1406), OR TRANSFER FOR CONVENIENCE (28 U.S.C. § 1404), OR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (Rule 12(b)(2)) |

   This is essentially a fraud/breach of contract case involving the sale of Boer goats between Alan Peacock ("Peacock"), and an Oklahoma goat ranch, W.W. Boer Goats ("WW Boer"), run by Frank Willis ("Frank") and Ruth Willis ("Ruth"), (collectively "Defendants"). Peacock asserts claims for breach of contract, intentional misrepresentation, U.C.C. Article 2 breach of warranty, and violation of California Business and Professions Code § 17200 for unfair and deceptive business practices. Peacock seeks over $75,000 in damages. Defendants have filed a Rule 12(b)(3) motion to dismiss for improper venue, or alternatively transfer under 28 U.S.C. § 1406 to the Northern District of Oklahoma, or alternatively transfer to the Northern District of Oklahoma under 28 U.S.C. § 1404(a), or alternatively dismissal for lack of personal jurisdiction. For the reasons that follow, Defendants's motion will be granted.

## FACTUAL BACKGROUND

From his complaint, Peacock alleges that on March 30, 2005, he purchased three registered Boer buck goats from Defendants. Defendants agreed to deliver the bucks along with a doe herd to be purchased by Peacock in May 2005. Until Plaintiff chose the doe herd, Defendants agreed to feed and care for the bucks. Plaintiff was a resident of California at this time.

On May 2, 2005, Peacock traveled to Defendants's Oklahoma ranch to select a doe herd. Frank showed Peacock what appeared to be a "premium" doe herd and ordered the herd manager to inspect and remove any "unsuitable" does. Peacock agreed to purchase 115 of the does shown by Frank, and Frank stated that all or most of those does were pregnant, and that the does would reproduce by July 2005. Peacock tendered a check for over half the purchase price, the remainder to be paid upon delivery.

On June 9, 2005, Frank called Peacock to confirm that the does and bucks would be delivered within the week, but that two does were too pregnant heavy to ship. Peacock agreed to let Defendants replace the two does.

On June 11, 2005, Peacock received the does, but the goats failed to comply with the agreement and representations made by Defendants since the goats had serious health problems. Further, the three bucks had not been shipped, several of the does were delivered without markings that corresponded to their registration certificates, at least one kid goat was delivered without its registration certificate, and two weathered buck goats were included within the doe herd. Peacock promptly notified Defendants of the non-conforming delivery. Frank admitted that the delivery was non-conforming and Defendants agreed to sell Peacock additional does and kids, which were to be delivered with the pending bucks.

In July 2005, Peacock informed Defendants that none of the does had given birth. In August 2005, only one doe had given birth and less than 20% of the purchased herd was pregnant. The non-reproductive nature of the does delivered was contrary to the agreement and representations made by Defendants.

On August 23, 2005, Defendants notified Peacock that the bucks, replacement does, and other pending goats would be shipped to Peacock's Utah ranch. Frank informed Peacock that one of the bucks and two of the pending kid goats had died, but agreed to replace these goats. The goats were to be marked separately so as to distinguish them from other goats that were being shipped together to a different buyer.

On August 26, 2005, Peacock learned that the pending goat shipment had not been marked so as distinguish the goats meant for Peacock from the goats meant for the other purchaser. Peacock notified Defendants and asked them to indicate which of the goats belonged to Peacock, but Defendants failed to do so. Plaintiff proceeded to pick out the goats that he could identify based on age or ear tags. One of these goats was a young buckling that died of pneumonia the following month. Shortly thereafter, Peacock treated several other goats for diseases and health problems that had progressed over time.

As a result of the above non-conforming goat shipments, Peacock suffered significant damages, including the loss of several generations of goats at a time when demand for goat meat has been high. On April 14, 2006, Peacock brought suit in this Court on the basis of diversity, alleged that venue is proper under 28 U.S.C. § 1391(a)(2), and alleged four causes action for breach of contract, misrepresentation, breach of warranty, and unfair and deceptive business practices. Peacock alleges that misrepresentations occurred in California, that Defendants purposefully availed themselves of merchants, consumers and markets in California, that Defendants regularly and systematically engage in business with merchants in California, and have received substantial compensation from goat sales in California. Peacock further alleges that a substantial portion of the events described occurred within Modesto, California, and that Defendants negotiated the subject transaction with Plaintiff by directing their activities to Peacock's then residence of Modesto. Further, WW Boer operates an internet website through which it regularly solicits California residents and advertises the sale of goats. California residents can purchase goats from Defendant's website via the internet.

Defendants now move to dismiss or transfer to the Northern District of Oklahoma, based

on improper or inconvenient forum, and or to dismiss for lack of personal jurisdiction.[1]

In support of their motions, Defendants have filed declarations from Frank, Ruth, and their attorney. The declarations are basically identical and read:

> 2. I hereby declare that I have read the foregoing Motion to Dismiss . . ., I know the contents thereof, and declare that the contents are true based on my own knowledge, except for those matters which are therein stated on information and belief, as to those matters I believe them to be true.
>
> 3. Defendants, Frank Willis and Ruth Willis, are individuals residing in Oklahoma.
>
> 4. Defendant, WW Boer Goats, Inc., is a corporation with its principal place of business in Oklahoma and is in the business of livestock development and resale.
>
> 5. Defendant, WW Boer Goats, Inc., is not incorporated in California; nor has it qualified to do business in California. Defendant has no subsidiary incorporated or qualified to do business in California.
>
> 6. The interests of justice and the convenience of the parties and witnesses would be served by transferring this action to the Northern District of Oklahoma for the following reasons:
>     (A) It would be burdensome and inconvenient for [all Defendants] to attend trial in California because of the expense of travel and time away from the business and other pursuits.
>     (B) All the books and records of WW Boer Goats are located in the district to which transfer is sought.
>     (C) All the face to face meetings and transactions occurred in the Northern District of Oklahoma. Checks were tendered there and the first contact between Plaintiff and Defendant, WW Boer Goats, was received in Oklahoma.

See Declarations of Frank Willis and Ruth Willis at ¶¶ 2-6.

Additionally, there has been no dispute that the goats in question were delivered to Utah, see Defendants's Motion at 2:19-20; Declarations of Frank and Ruth Willis at ¶ 2, and that Peacock viewed Defendants's website and sent a March 21, 2005, e-mail to Defendants that read:

> My wife and I have chosen to become meat goat farmers. We have the time, land, and background to make this adventure real. We are interested in a starting herd of 100-200 animals (I think 100 is a good starting herd) but the right price is also a consideration. We are looking at Boer/Spanish mix, but would take your advice on our best option, please contact me for a talk. I don't have to be 'sold' on the idea, I just don't have the experience in buying quality animals (goats), sheep I understand, we just want goats.

---

[1] Defendants do not list "Rule 12(b)(2)" in their motion, but instead simply refer to personal jurisdiction. However, dismissal for want of personal jurisdiction is a motion under Rule 12(b)(2). See Fed. R. Civ. Pro. 12(b)(2).

4

Defendants's Motion at 4:1-4 (grammatical errors corrected); Declarations of Frank and Ruth Willis at ¶ 2 (stating that they know the contents of their motion and know them to be true).

Peacock has filed opposition declarations that include electronic transmissions from Defendants. Peacock declares in relevant part:

> 1. . . . All of my other potential witness [excluding himself and his wife] are in California, which is where I lived during almost all of the factual occurrences alleged in my lawsuit.
>
> 2. Although I now operate a goat farm in Utah, I still work as a licensed private investigator in California. I still have several pending California civil and criminal matters on which I work as an investigator, and, since my move to Utah, I have frequently had to travel back to California in relation to those matters. My wife also travels regularly back to California, and we have a secondary residence in the Modesto . . . area, but not in Utah or Oklahoma.
>
> 3. The negotiations of the contract occurred between the parties when the plaintiff was a resident of Modesto . . . and the goats that are at the heart of this lawsuit were purchased by Plaintiff when he was a California resident. Even further, Plaintiff was enticed to travel from California to Oklahoma on what he contends are false representations as to the animals he would be able to purchase, and those misrepresentations were purposefully directed at him while he was in California. . . . .
>
> 4. I regularly receive unsolicited e-mails from the Defendants, so their Internet operations are not, as they allege, completely passive. Moreover, some of these e-mails confirm that the Defendants have been to California conducting business, indicating that it should not pose an undue hardship for them to defend a claim related to their business in California.

First Declaration of Alan Peacock at ¶¶ 2-4.

In a "further corrected" declaration, Peacock declares:

> 2. My wife and I did not move to Utah until late April-early May 2005, but I purchased the goats that are the subject of this action on March 30, 2005.[2] All of the preceding negotiations, including the many misrepresentations detailed in my complaint, occurred when I was a California resident, and those negotiations occurred via telephone, e-mail, and facsimile when I was in California. [The attached April 22, 2005, e-mail] shows that I had not yet established residence in Utah and was still in California when a deal was struck for the purchase of the subject goats. The trip to the Oklahoma ranch was only for the purpose of picking our specific goats and does.

---

[2] In a declaration entitled "further declaration of Alan Peacock," Peacock originally declared that he purchased the goats on May 30, 2005. In a declaration entitled "corrected further declaration of Alan Peacock," Peacock declares that he purchased the goats on March 30, 2005. The corrected further declaration was filed after the Court took this matter under submission. However, the corrected declaration contains no other changes and the Court, when reviewing the original "further declaration," noticed that the May 30, 2005, date was inconsistent with both the opposition and the complaint. Accordingly, the Court will consider this "corrected further declaration."

> 3. Since the beginning of doing business with the defendants, I have been the recipient of many unsolicited e-mails . . . . One of those e-mails describes deliveries made by the defendants to California. Other e-mails show that the defendants recruited California customers, by, among other conduct, advising prospective California purchasers of the pertinent legal requirements.

Second Declaration of Alan Peacock at ¶¶ 2-3.

Also, attached as part of the Corrected Further Declaration is an April 22, 2005, e-mail from Peacock to Frank. This e-mail reads in part:

> Hi Frank. We will be there on May 1, but won't make it to your location until the AM on May 2. What would I have to do to take advantage of the "sale" you are having? I believe we will be making a purchase of at least 100 does. . . . You have my bucks, I will look forward to meeting them! I can take delivery anytime mid-May on. (I have to put up some fence) I expect to do that next week. . . . All of my e-mail addresses will change on Monday to [e-mail address] (I think!) I will have to check that to [sic] mailing address is HC 74 Box 6025, Cove Fort, Utah 84713.

Exhibit 1 to Corrected Further Peacock Declaration.

Finally, Peacock's counsel in part declares:

> 3. In November of 2005, I caused a pretext call to be made to the office of WW Boer Goats, Inc., for investigation purposes. Specifically, the pretext call was intended to determine the amount of business that the defendants conduct in California.
>
> 4. During that call, Frank Willis, the principal of WW Boer Goats, represented that the defendants regularly ship goats to California and indicated that they had a relationship with a trucking company that handled their California deliveries for them. Mr. Willis further indicated that he himself had been to California conducting business on behalf of the defendants.

Declaration of Kevin Little at ¶¶ 3-4.[3]

## PERSONAL JURISDICTION OVER DEFENDANTS

*Defendants's Argument*

Defendants argue that the standard for establishing general jurisdiction is "fairly high." Here, Peacock is the person who initiated contact with Defendants. It is true that Defendants have a website that Peacock saw, but the website is passive in that it does little more than make

---

[3] Both Mr. Little and Peacock also declare that Mr. Little is Peacock's personal and longtime attorney and that Little would effectively be unable to represent Peacock if the Court transferred this case to Utah or Oklahoma. See Little Declaration at ¶ 2; First Peacock Declaration at ¶ 1.

information available to people who are interested in goats. The website has no interactive features, does not solicit customers, and does not send proactive e-mails. It was Peacock, not Defendants, who made contact and that contact was directed to Oklahoma.

Additionally, at other points in the motion, Defendants argue that it is unreasonable for them to have to defend this case in California, that they did not purposefully direct their acts to California, and that they have never subjected themselves to California jurisdiction.

*Plaintiff's Opposition*

Peacock responds that Defendants's argument that they are subject to general jurisdiction is irrelevant since they are subject to specific jurisdiction in California. Defendants purposefully availed themselves of California by committing intentional, tortious acts against a California resident. Although the mere existence of a contract is insufficient to confer personal jurisdiction, when a non-resident transacts business by negotiating and executing a contract via telephone calls and letters with a resident of the forum state, then the defendant has purposefully availed himself of the forum. Further, because Defendants move for dismissal under Rule 12(b)(2) in the alternative to its Rule 12(b)(3) and alternative 28 U.S.C. §§ 1404, 1406 requests, had filed a stipulation prior to filing this motion, and have consented to jurisdiction by the magistrate judge, Defendants have arguably waived any complaints regarding personal jurisdiction.

**Legal Standard**

Plaintiffs bear the burden of establishing that a court has personal jurisdiction over defendants. See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004); Mattel, Inc. v. Greiner & Hausser, GmbH, 354 F.3d 857, 862 (9th Cir. 2003); Dole Food Co. v. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002). When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986); Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977). Where the motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiff "need only make a prima facie showing of jurisdictional facts." Schwarzenegger, 374 F.3d at

800; Mattel, 354 F.3d at 862; Dole Food, 303 F.3d at 1108. "Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,' . . . uncontroverted allegations in the complaint must be taken as true." Schwarzenegger, 374 F.3d at 800 (quoting Amba Marketing Systems, 551 F.2d at 787); Dole Food, 303 F.3d at 1108; AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996). Any conflicts between facts contained within the declarations or affidavits submitted by the parties are resolved in the plaintiffs' favor for purposes of plaintiffs' prima facie case. See Schwarzenegger, 374 F.3d at 800; Mattel, 354 F.3d at 862; Dole Food, 303 F.3d at 1108; AT&T, 94 F.3d at 588.

In the absence of a specific statutory provision, federal courts apply the personal jurisdiction laws of the state in which they are situated. See Schwarzenegger, 374 F.3d at 800-01. "Because California's long-arm jurisdictional statute [Cal. Civ. Proc. Code § 410.10] is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." Id.

"A state may exercise either general or specific jurisdiction over a defendant." Lake v. Lake, 817 F.2d 1416, 1420-21 (9th Cir. 1987). "General jurisdiction exists if the nonresident's contacts with the forum are continuous and systematic, and the exercise of jurisdiction satisfies traditional notions of fair play and substantial justice." Ziegler v. Indian River County, 64 F.3d 470, 473 (9th Cir. 1995). For specific jurisdiction, there is a three part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Dole Food Co., 303 F.3d at 1111. This test requires more than simple foreseeability of causing injury in another state. See Terracom v. Valley Nat'l Bank, 49 F.3d 555, 560 (9th Cir. 1995). The foreseeability required by due process analysis is that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Id. It is the purposeful availment prong that prevents defendants from being "haled

into a jurisdiction through random, fortuitous, or attenuated contacts." Id.  The Ninth Circuit distinguishes between tort cases and contract cases for purposes of determining purposeful availment.  See Ziegler, 64 F.3d at 473; Roth v. Marquez, 942 F.2d 617, 621 (9th Cir. 1991). Courts generally review contract cases under a purposeful availment analysis, and review tort cases under a purposeful direction analysis.  See Schwarzenegger, 374 F.3d at 802.  Although courts use the shorthand "purposeful availment" for both availment and direction, they are distinct concepts.  Id.

For purposeful direction in tort cases, Courts utilize an "effects" test.  Schwarzenegger, 374 F.3d at 803; Dole Food, 303 F.3d at 1111; Roth, 942 F.2d at 621.  Under the effects test, the plaintiff must show that the defendant:  (1) committed an intentional act; (2) that was expressly aimed at the forum state; and (3) that caused harm that the defendant knows is likely to be suffered in the forum state.  See Dole Food, 303 F.3d at 1111.  Conduct is expressly aimed at a forum state when the defendant's conduct is "targeted at a plaintiff whom the defendant knows to be a resident of the forum state."  Id.  Communications with a plaintiff in the forum in the form of letters, faxes, and phone calls which contain fraudulent misrepresentations can constitute "express aiming."  See id. at 1111-12 (citing with approval Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 212 (5th Cir. 1999)).  A line of authority had required that "the brunt of the harm" occur within the forum state.  E.g. Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1087 (9th Cir. 2000).  However, the Ninth Circuit has recently clarified that the "brunt of the harm" need not be suffered in the forum state.  See Yahoo! Inc. v. La Ligue Contre Le Racisme, 433 F.3d 1199, 1207 (9th Cir. 2006) (citing Keeton v. Hustler Magazine, 465 U.S. 770, 772-73 (1984)).  "If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state."  Yahoo!, 433 F.3d at 1207.

In contract cases, a "showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there."  Schwarzenegger, 374

F.3d at 802. However, a "contract alone does not automatically establish the requisite minimum contacts necessary for the exercise of personal jurisdiction." Gray & Co. v. Firstenberg Machinery Co., 913 F.2d 758, 760 (9th Cir. 1990). "Prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' are the factors to be considered. The foreseeability of causing injury in another state is not a sufficient basis on which to exercise jurisdiction." Gray & Co., 913 F.2d at 760 (quoting and citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 478-79 (1985)); Roth, 942 F.2d at 621; Sher v. Johnson, 911 F.2d 1357, 1364 (9th Cir. 1990); Campbell v. Hubbard, 2006 U.S. Dist. LEXIS 1045 (D. Ariz. 2006).

The second prong of specific jurisdiction, the "arising out of" prong, requires that the contacts relied on for personal jurisdiction actually relate to the cause of action. See MGM Studios Inc. v. Grokster, Ltd., 243 F. Supp. 2d 1073, 1085 (C.D. Cal. 2003) ("Contacts with a forum state are relevant for purposes of specific jurisdiction only if they are sufficiently related to the cause of action. . . . Thus, if Plaintiffs' claims would have arisen notwithstanding certain contacts, those contacts are not relevant to the jurisdictional analysis."). "But for" causation is all that is required since a "restrictive reading of the 'arising out of' requirement is not necessary in order to protect potential defendants from unreasonable assertions of jurisdiction." Shute v. Carnival Cruise Lines, 897 F.2d 377, 385 (9th Cir. 1990).[4]

Once a court has found purposeful availment, the reasonableness of jurisdiction is presumed. See Ochoa v. J.B. Martin & Sons Farms, 287 F.3d 1182, 1192 (9th Cir. 2002); Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995); Sher, 911 F.2d at 1364. The burden is then shifted to the defendant to make "a compelling case that the presence of some other considerations that would render jurisdiction unreasonable." Burger King, 471 U.S. at 477; Schwarzenegger, 374 F.3d at 802; Dole Food, 303 F.3d at 1114; Ballard, 65 F.3d at 1500. In determining whether the exercise of jurisdiction comports with "fair play and substantial justice," and is therefore "reasonable," courts are to consider seven factors:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs;
> (2) the burden on the defendant of defending in the forum; (3) the extent of

---

[4] Reversed on other grounds, 499 U.S. 585 (1991).

conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Dole Food, 303 F.3d at 1114.

"If any of the three requirements [for specific jurisdiction] are not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." Pebble Beach Co. v. Maddy, 453 F.3d 1151, 1155 (9th Cir. 2006); see also Schwarzenegger, 374 F.3d at 802. Recently, the Ninth Circuit has held that, where a plaintiff fails to establish purposeful availment, a court "need not address whether the claim arose out of or resulted from [the defendant's] forum related activities or whether an exercise of jurisdiction is reasonable . . . ." Pebble Beach, 453 F.3d at 1155. However, the Ninth Circuit has also held, "Jurisdiction may be established with a lesser showing of minimum contacts if considerations of reasonableness dictate. Under this analysis, there will be cases in which the defendant has not purposefully directed its activities at the forum state, but has created sufficient contacts to allow the state to exercise personal jurisdiction if such exercise is sufficiently reasonable." Ochoa, 287 F.3d at 1189 n.2; see also Gray & Co., 913 F.2d at 761.

*Discussion*

Initially, the Court does not believe that Defendants's conduct is sufficient to waive their objection to personal jurisdiction. It is true that personal jurisdiction may be waived, either by failing to timely assert the defense or by the course of conduct pursued by a party during litigation. See Fed. R. Civ. Pro. 12(g), (h); Peterson v. Highland Music, Inc., 140 F.3d 1313, 1318 (9th Cir. 1998). "Rule 12(g) requires that a party who raises a defense by motion prior to an answer raise all such possible defenses in a single motion . . . ." Chilicky v. Schweiker, 796 F.2d 1131, 1136 (9th Cir. 1986), rev'd on other grounds, 487 U.S. 412 (1988); Fed. R. Civ. Pro. 12(g). Here, Defendants's first responsive motion contains a Rule 12(b)(3) and a challenge to personal jurisdiction, i.e. a Rule 12(b)(2) motion. Cf. Fed. R. Civ. Pro. 12(g); Peterson, 140 F.3d at 1319 ". . . the minimum requirements of Rule 12 are satisfied when a defendant raises the issue of personal jurisdiction in a timely motion to dismiss."). Prior to filing this motion, Defendants filed a stipulation "to answer or otherwise respond." See Court's Docket Document No. 10. Filing the motion at bar is "otherwise responding" to Peacock's complaint, and the

Court does not see conduct sufficient to warrant a waiver from this stipulation. Cf. Benny v. Pipes, 799 F.2d 489, 493 (9th Cir. 1986) ("Generally, a motion to extend time to respond gives no hint that the answer will waive personal jurisdiction defects, and is probably best viewed as a holding maneuver while counsel consider how to proceed."). Further, after filing the motion at bar, Defendants filed a consent under 28 U.S.C. § 636(c)(1) to have the magistrate "conduct any further proceedings." See Court's Docket Document No. 16. The Court does not believe that merely consenting to have the magistrate handle "any further proceedings" constitutes a waiver of Defendant's then pending Rule 12(b)(2) motion. Cf. Peterson, 140 F.3d at 1318 (discussing "sandbagging" as conduct sufficient to waive personal jurisdiction). Finally, with respect to the structure of Defendants's motion, the structure is poor. The style of the motion suggests that Defendants's personal jurisdiction challenge is in the alternative to their venue motions, including their 28 U.S.C. §§ 1404, 1406 motions. There is no section that is captioned as relating specifically to personal jurisdiction. The captions within the motion are in terms of venue issues (such as "substantial portion" and "convenience"), but nevertheless contain argument and authority relating to personal jurisdiction, e.g. Defendants state at several points that there is no personal jurisdiction or that to exercise personal jurisdiction would be unreasonable. See Defendant's Motion at pp. 3-5, 6-8. Despite the structure of the motion, because the style of the motion raises personal jurisdiction and because of the references and argumentation relating to jurisdiction contained within the motion, the Court does not believe that there is an intent to appear, defend, and/or waive personal jurisdiction in this case. Defendants's motion could have been more artfully pled and argued, but Peacock has recognized the personal jurisdiction issue and responded thereto. To find a waiver under these circumstances would unnecessarily elevate form over substance. Cf. Phat Fashions, L.L.C. v. Phat Game Ath. Apparel, Inc., 2001 U.S. Dist. LEXIS 13892, *8-*9 (S.D.N.Y. 2001); Boss Prods. Corp. v. Tapco Int'l Corp., 2001 U.S. Dist. LEXIS 1509, *4 (W.D.N.Y. 2001).

   As to personal jurisdiction over Defendants, it appears uncontested that a contract was agreed upon on March 30, 2005, for the purchase of 3 buck goats and a doe herd (to be chosen in

May 2005).[5]  See Plaintiff's Complaint at ¶ 13; Corrected Further Peacock Declaration at ¶ 2. According to the complaint, the contract called for Defendants to care for the bucks until Peacock chose a doe herd, and then all goats would be delivered together.  See Complaint at ¶ 9. Peacock's declarations show that this contract was negotiated over faxes, e-mails and telephone calls (of unknown quantity) while Peacock was in Modesto, and presumably Defendants were in Oklahoma.  See Corrected Further Peacock Declaration at ¶ 2.  Defendants did not deliver conforming goats, and additional shipments to Utah were made, apparently in an effort to cure the breach.  See Complaint at ¶ 16.  Although no party has stated expressly, the submissions to the Court show that all goats were intended to be shipped to Peacock's ranch in Utah.[6]

This does not show sufficient contact with California under a purposeful availment/contracts analysis.  There is no evidence that Defendants ever went to California as part of the contract or contract negotiations with Peacock, and the extent of the negotiations are not described.  It does not appear that Defendants solicited Peacock, cf. Shute, 897 F.2d at 381 ("defendant's act of soliciting business in the forum state will generally be considered purposeful availment if that solicitation results in contract negotiations or the transaction of business."), and there is no evidence regarding where the contract was executed or formalized.  The further contact and actual performance of the contract by Defendants had nothing to do with California. The March 30, 2005, contract did contemplate future contact, but as to Peacock, that contact involved traveling to Oklahoma to pick a doe herd at a time when he declares that he had moved,

---

[5] No party has produced a copy of the contract and it is unknown if the agreement is written or oral.

[6] Peacock declares that he agreed to purchase goats on March 30, 2005, that he currently raises goats in Utah, and that he moved to Utah in late April/early May 2005.  See Corrected Further Peacock Declaration at ¶ 2. He alleges that the March 30, 2005 agreement encompassed the sale of 3 bucks and a doe herd to be chosen in May 2005, and alleges that goats were not shipped until early June 2005.  See Complaint at ¶¶ 9, 12.  Also, a May 1, 2005, invoice from Defendants to Peacock is attached to Defendants's motion as Exhibit A.  The invoice is stamped "PAID," lists under the "Bill To" section "Alan Peacock, HC 75 Box 6025, Cove Fort/Beaver, Utah 84713," and under the "Shipping & Handling" part of the "Description" section states "This invoice is paid by as check deposit of $12,375 now and $12,000 when we are ready to ship the goats.  These goats will be shipped with others sometime between June 1 & June 30, 2005."  See Exhibit A of Defendants's Motion; Declarations of Frank and Ruth Willis at ¶ 2.  Also, Defendant's motion states that the shipments of goats were sent to and from Utah and Oklahoma.  See Defendants's Motion at 2:19-20, 4:7-8; Declarations of Frank and Ruth Willis at ¶ 2.  Finally, an April 22, 2005, e-mail from Peacock to Frank states that Peacock can take delivery "anytime mid-May on" because he had to install a fence, and that he would have to check on his specific Utah address.  See Corrected Further Peacock Declaration Exhibit 1.  Peacock has not stated that the goats were not shipped to Utah or that the goats were ever intended to be shipped to some place other than Utah.  In the absence of a physical contract, given the declarations and papers on file and the time frames involved, the Court can only conclude that all goats were to be shipped to Utah as part of the March 30, 2005, purchase agreement.

13

or was in the process of moving, to Utah. See Corrected Further Peacock Declaration at ¶ 2; Complaint at ¶ 9. As to Defendants, the further contact entailed showing Peacock a doe herd in Oklahoma and shipping all of the goats to Utah. There is no evidence indicating that Defendants were required to, or actually did, perform any acts within California as part of their performance under the contract. Instead, Defendants were required to care for the buck goats in Oklahoma and then ship all of the goats to Utah. Also, there has been no evidence presented that the March 30, 2005, agreement for the bucks and a doe herd encompassed or was meant to begin a regular or on-going business relationship between the parties. The only evidence before the Court suggests a single, arms length transaction for the purchase of a goat herd (bucks and does). Peacock has only shown that some relatively vague negotiations occurred while he was in California, which culminated in an agreement to purchase goats that were to be delivered in Utah.[7] That is, Peacock has shown only the existence of contract. Peacock has not met his burden since the evidence and pleadings indicate Defendants are being "haled into a jurisdiction through random, fortuitous, or attenuated contacts." Cf. Gray & Co., 913 F.2d at 760-61.

Assuming Peacock's misrepresentation claims are not sufficiently related to the contract,[8] Peacock has not made a sufficient showing of purposeful direction under the "effects test." Peacock has not contested that he initiated contact with Defendants. See Defendants's Motion at 4:1-4; Declarations of Frank and Ruth Willis at ¶ 2. Peacock's complaint and declarations indicate that false representations were made regarding, *inter alia*, the health and reproductive capacities of the goats in order to induce purchase.[9] See Complaint at ¶¶ 23-24. Further, Peacock's declarations indicate that negotiations occurred over fax, e-mail, and telephone while Peacock was in Modesto, California. See First Peacock Declaration at ¶ 3; Corrected Further

---

[7] The Court does not know where the contract was actually created. It is likely that it was partially created in both Oklahoma and California.

[8] In cases arising out of contractual relationships, even if some claims sound in tort, the Ninth Circuit utilizes a purposeful availment/contract analysis. See Gray & Co., 913 F.2d at 759-61; Sher, 911 F.2d at 1362; McDevitt v. Guenther, 2006 U.S. Dist. LEXIS 51012, *16 (D. Haw. 2006); see also Warfield v. Gardner, 346 F.Supp.2d 1033, 1040 (D. Ariz. 2004).

[9] The other specific representations that are detailed in Peacock's complaint do not show that they were received in California or while Peacock was a resident of California. With the exception of paragraphs 23 and 24, the other representations outlined in the complaint occurred between May and August 2005. See Complaint at ¶¶ 9-17. This time frame corresponds to a time when Peacock was in the process of moving to Utah or had already moved to Utah. See Corrected Further Peacock Declaration at ¶ 2.

14

Peacock Declaration at a¶ 2. The Court assumes that this is sufficient to show that Defendants committed an intentional act (misrepresentations) and that those acts were expressly aimed at the forum state because Peacock, a California resident at the time, received those alleged misrepresentations in California. See Dole Food, 303 F.3d at 1111-12. Nevertheless, what is lacking is the element of harm. Peacock has declared that he moved to Utah in late April/early May 2005, see Corrected Further Peacock Declaration at ¶ 2, that he currently operates a goat ranch in Utah, see id., and his complaint states that he is a resident and citizen of Utah. See Complaint at ¶ 5. The harm in this case occurred when Defendants delivered allegedly sickly and infertile goats to Peacock in Utah. These deliveries occurred in June and August of 2005, well after late April/early May 2005. See Corrected Further Peacock Declaration at ¶ 2; Complaint at ¶¶ 12-17. Moreover, the damages identified in the complaint, loss of generations of goats and lost profits, necessarily occurred after delivery of the goats to Utah and after Peacock had relocated to Utah. Although the brunt of the harm has certainly not occurred in California, the Court sees no harm occurring in California, let alone a "jurisdictionally sufficient amount." See Yahoo!, 433 F.3d at 1207. Since no apparent harm occurred in California, Peacock has not met the third element of the "effects test."

Under either a purposeful availment analysis for contract cases or a purposeful direction and "effects" analysis for tort cases, Peacock has not met his burden. Accordingly, Peacock has not shown that Defendants have sufficient minimum contacts with California. See Pebble Beach, 453 F.3d at 1155; Gray & Co., 913 F.2d at 760-62.

Since the Court has found that Peacock has failed to adequately establish the first prong of specific jurisdiction, *Pebble Beach* suggests that no further analysis is necessary, but *Ochoa* suggests that the Court should nevertheless examine the reasonableness prong. Given this tension, the Court will examine the reasonableness prong.[10] Because Peacock has not adequately shown purposeful availment or purposeful direction, the burden has not shifted to Defendants and there is no presumption of reasonableness. Cf. Ballard, 65 F.3d at 1500 (noting that once

---

[10] The Court believes that the "arising out of" prong is sufficiently met since "arising out of" simply requires "but for" causation. See Gray & Co., 913 F.2d at 761. Here, but for the representations regarding health and "reproductivity," it appears that no contract would have been made, no goats would have been purchased, no trip to Oklahoma would have occurred, and lost goat generations and profits would not have occurred.

15

purposeful availment is found, reasonableness is presumed and the burden shifts to defendant). The Court examines seven factors in determining the reasonableness of exercising specific jurisdiction over Defendants.[11] See Dole Food, 303 F.3d at 1114.

   *1. The extent of the Defendants' purposeful injection into the forum state's affairs*

In addition to the pertinent facts of this case, Peacock's counsel has declared that he caused a pretext call to be made to Defendants and that Frank said that they regularly ship goats to California, that they have a relationship with a shipping company to ship the goats, and that Frank had recently been to California on business. See Little Declaration at ¶ 4. Further, Peacock has submitted e-mails and/or website postings from Defendants that describe a recent delivery to California (a delivery of 215 goats to three customers), and a list of disease-testing requirements for goats as required by approximately 45 states, including California. See Exhibit 2 Corrected Further Peacock Declaration. Peacock argues that the e-mails show that Defendants's internet business is not as passive as Defendants argue. Defendants have declared that they reside/have their principal place of business in Oklahoma, that WW Boer is not incorporated in California, has not qualified to do business in California, and has no subsidiary incorporated or qualified to do business in California. See Defendants's Declarations at ¶¶ 3-6.

The Court believes that the evidence presented tends to show reasonableness, primarily based on the results of Peacock's pretext call. Identifying another delivery of 215 goats and listing California's health testing requirements[12] along with approximately 44 other states's health requirements is not particularly compelling. Nevertheless, given the results of the pretext call, the Court believes that this consideration weighs in favor of reasonableness.

   *2. The burden on the defendant of defending in the forum*

Defendants have declared that Frank and Ruth reside in Oklahoma and that WW Boer has

---

[11] Although located in a section of their motion that is captioned as a change of venue for convenience, Defendants address the reasonableness prong of specific jurisdiction. For a motion to transfer venue under 28 U.S.C. § 1404(a), the proper factors are listed in *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). The proper factors for a court to consider in assessing reasonableness for specific jurisdiction can be found in *Dole Food*, 303 F.3d at1114. Defendants's analysis in their memorandum deals with the "*Dole Food* factors." See Defendants's Motion at pp. 6-7. In fact, Defendants cite *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998), which is a personal jurisdiction case, and not a § 1404 case.

[12] The only testing requirement listed for California is "scrapie." See Corrected Further Peacock Declaration Exhibit 2.

no agents or subsidiaries in California and is not qualified to do business in California. See Defendants's Declarations at ¶¶ 3-5. Further, Defendants declare that the burden of traveling to California to defend this suit would require time away from conducting their business and would be burdensome and inconvenient. See id. at ¶ 6. Peacock's evidence indicates that Frank told Peacock's counsel that he had just returned from a business trip in California and that Defendants have a carrier who ships goats to California. See Little Declaration at ¶ 4.

The extent of Defendants's business operations or the nature of the trip is not explained. Also, having another individual or entity actually ship goats to California while Defendants remain in Oklahoma seems qualitatively different from actually traveling to California to defend a lawsuit. Although, given our era of electronic communication and discount travel, the inconvenience of traveling to California from Oklahoma is diminished. See Panavision Int'l v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998). While close, the Court believes that this factor weighs slightly against a finding of reasonableness.

    *3. The extent of conflict with the sovereignty of the defendant's state*

This factor generally entails a comparison between the competing sovereign interests in regulating the Defendants's behavior. See Dole Food, 303 F.3d at 1115. As between California and Oklahoma, the Court believes that Oklahoma would have a greater interest in this suit. Defendants are based in Oklahoma and appear to have conducted their activities relative to this transaction in Oklahoma. As discussed below, the Court does not see that California has a significant interest in adjudicating this case. However, "The conflict with the sovereignty of the defendant's state is not a very significant factor in cases involving only U.S. citizens; conflicting policies between states are settled through choice of law analysis, not through loss of jurisdiction." Brand v. Menlove Dodge, 796 F.2d 1070, 1076 n.5 (9th Cir. 1984). Given these considerations, this factor is neutral.

    *4. The forum state's interest in adjudicating the dispute*

California generally has strong interests in protecting its residents from injury, but has weaker interests when nonresidents sue in California courts. See Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1200 (9th Cir. 1988). California does not have a significant interest in adjudicating this dispute. These goats were purchased shortly before Peacock moved out of

California and to Utah, the does were chosen in Oklahoma, all goats were to be shipped to Utah, the goats are in Utah and not in California, Peacock is no longer a citizen or resident of California, and the harm was felt in Utah after Peacock had moved to Utah. In other words, the goats were purchased at a time when Peacock was leaving California in order to raise goats in Utah. Peacock declares that he still does investigatory work in California, but this case has nothing to do with his investigatory work and he is now a citizen and resident of Utah. The Court believes that this factors weighs against a finding of reasonableness. Cf. Gray & Co., 913 F.2d at 761-62; Brand, 796 F.2d at 1075-76.

    *5. The most efficient judicial resolution of the controversy*

This factor "involves a comparison of alternative forums," and the "site where the injury occurred and where evidence is located usually will be the most efficient forum." Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 852 (9th Cir. 1993). Here, Peacock's injury has not occurred in California. Peacock's injury occurred in Utah after he had moved out of California, the goats are located in Utah, and Defendants's evidence is located in Oklahoma.[13] The Court does not know the location of Peacock's evidence, although Peacock does indicate that he has witnesses (who are not identified) who are located in California.[14] On the whole, this factor weighs against a finding of reasonableness.

    *6. The importance of the forum to the plaintiff's interest in convenient and effective relief*

The importance of California to Peacock seems to be largely that his counsel is located in California. See First Peacock Declaration at ¶ 1. Otherwise, Peacock lives in Utah and raises his goats in Utah, although he does travel to California with respect to investigatory work. Peacock has declared that his witnesses reside in California, but he nowhere identifies those witnesses or what their testimony may be. In the context of a 28 U.S.C. § 1404 motion, the location of a party's attorney is generally not considered, see In re Volkswagen AG, 371 F.3d 201, 206 (5th Cir. 2004); Langford v. Ameritanz, Inc., 2006 U.S. Dist. LEXIS 32823, 28-29 (E.D. Cal. 2006),

---

[13] The Court does not know the quantity or quality of Defendants's evidence in Oklahoma, although Defendants's motion indicates that witnesses to the goats's condition reside in Oklahoma.

[14] The quantity and quality of Peacock's evidence is unknown. Since Peacock is a citizen and resident of Utah, it is likely that a significant portion of his evidence is located in Utah. However, since Peacock's counsel is in California, at least some of his evidence is likely located in California.

18

and witnesses generally need to be identified and the substance and importance of their testimony explained.  See Florens Container v. Cho Yang Shipping, 245 F.Supp.2d 1086, 1092-93 (N.D. Cal. 2002); Williams v. Bowman, 157 F.Supp.2d 1103, 1108 (N.D. Cal. 2001).  Since Peacock's witnesses are not identified or described, consideration of these witnesses is diminished.  While the presence of a longtime counsel within the forum has more relevance in this context than in 28 U.S.C. § 1404(a), the Court does not believe that it is a particularly strong consideration. Nevertheless, the Court believes that this factor weighs in favor of finding reasonableness.

      *7.  The existence of an alternative forum*

It appears that there are two alternative forums.  Oklahoma is the residence and/or principal place of business of Defendants, so personal jurisdiction could easily be exercised.  Also, given the evidence and pleadings before the Court, Utah may well be able to exercise personal jurisdiction over Defendants.  This factor weighs against a finding of reasonableness.

*Analysis*

Factors 1 and 6 weigh in favor of a finding of reasonableness, factor 3 is neutral, and factors 2, 4, 5, and 7 weigh against a finding of reasonableness.  The Court concludes that the reasonableness factors, "taken together, do not 'dictate' personal jurisdiction over [Defendants] in California in this case."  Brand, 796 F.2d at 1076; see also Gray & Co., 913 F.2d at 760-62.

## CONCLUSION

It is Peacock's burden to establish personal jurisdiction.  Since the Court did not hear testimony, Peacock needed to establish a prima facie showing of jurisdiction.  Peacock relied on his pleadings and declarations and argued that this Court could exercise specific jurisdiction over Defendants.  However, Peacock has not adequately established either personal availment, purposeful direction, or reasonableness.  Since the Court has found that it does not have personal jurisdiction over Defendants, it is unnecessary to decide Defendants's remaining motions.

//
//
//
//
//

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants's Rule 12(b)(2) motion is GRANTED and this case is DISMISSED;
2. Defendants's Rule 12(b)(3), 28 U.S.C. § 1404(a), and 28 U.S.C. § 1406 motions are DENIED as moot; and
3. The Clerk is directed to close this case.

IT IS SO ORDERED.

**Dated:    October 26, 2006**             /s/ Anthony W. Ishii
0m8i78                                           UNITED STATES DISTRICT JUDGE